UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NUMBER: 3:02CR341 (EBB) |
| | : | |
| v. | : | |
| | : | |
| ANGEL HERNANDEZ, DAVID BROWN, | : | |
| RICHARD BROWN and NELSON DATIL | : | February 21, 2007 |

**GOVERNMENT'S REPLY MEMORANDUM**

On February 2, 2007, defendants Angel Hernandez and David Brown filed a memorandum with the Court advancing three arguments: (1) that the Court should use a standard greater than a preponderance of the evidence standard in finding facts relevant to sentencing; (2) that the record is insufficient for the Court to make a reasonable estimate of loss; and (3) that a restitution figure can not be computed.[1]  For the reasons set forth below and those advanced in the Government's original memorandum (Doc. 803), the defendants' arguments are without merit and the Court should conclude that the loss amount attributable to the conspiracy is $6.5 million, which is within the range of $2.5 - $ 7 million dollars.[2]

---

[1]    Neither defendant Datil nor Richard Brown has filed a memorandum with respect to loss amount or restitution.

[2]    On February 2, 2007, the government filed a motion for a 5-day extension of time (Doc 794) until February 7, 2007 for its opening brief and moved for a commensurate 5-day extension of time in which to file its reply.   On February 5, 2007, the Court granted the government's motion for an extension of time.  Accordingly, the Government is filing its reply to the defendants submission on February 21, 2007.   The defendants filed their reply on the original reply date of February 16, 2007, however government counsel has not read the defendants' reply brief and the arguments contained herein are limited to addressing the arguments advanced in the defendants' original opening brief.

## DISCUSSION

**A.    The Preponderance of the Evidence Standard is the
Appropriate Standard in Finding Facts Relevant to Sentencing;
Booker/Fanfan and Their Progeny Have Not Change This Standard**

As the Second Circuited recently reiterated, "[w]ith regard to fact finding by the district court, we have long held that '[f]acts ... need [to] be established <u>only by a preponderance of the evidence</u>,' and that 'the court's factual findings are reviewed only for clear error.'" *United States v. Folkes*, 173 Fed. Appx. 63, 64 (2d Cir. 2006) *unpublished decision* (emphasis added) (*quoting United States v. Miller*, 116 F.3d 641, 684 (2d. Cir. 1997). *See United States v. Chen*, 127 F.3d 286, 291 (2d Cir. 1997) (concluding that the "in connection with" language of § 5C1.2 "is satisfied when the government establishes, by a <u>preponderance of the evidence</u>, that the firearm 'served some purpose with respect to' the offense").

In the case of *United States v. Salim*, 287 F. Supp. 2d 250 (S.D.N.Y. 2003) the District Court addressed this very issue with respect to unconvicted conduct – as compared with the case now before this Court where the Court is considering the extent of the conspiracy – and held the following with respect to the preponderance of the evidence standard:

> The Second Circuit has held that the preponderance of the evidence standard satisfies the requirements of due process in determining conduct relevant to sentencing issues under the Guidelines-even for the determination of "unconvicted conduct." *United States v. Gigante*, 94 F.3d 53, 55 (2d Cir. 1996) ("[U]nconvicted conduct may be relied upon to adjust a defendant's sentence level as contemplated by the Guidelines based on proof by a preponderance of the evidence." ); *United States v. Guerra*, 888 F.2d 247, 251 (2d Cir. 1989) ("[T]he preponderance of the evidence standard satisfies the requisite due process in determining relevant conduct pursuant to the Sentencing Guidelines" in the calculation of offense level based on defendant's possession of uncharged narcotics). In making factual findings under the Guidelines, the "sentencing court remains entitled to rely on any type of information known to it." *United States v. Concepcion*, 983 F.2d 369, 388 (2d Cir. 1992) (upholding sentence where trial

court referred at sentencing to conduct for which the defendant was acquitted) (*citing United States v. Carmona*, 873 F.2d 569, 574 (2d Cir. 1989)); *see also United States v. Franklyn*, 157 F.3d 90, 97 (2d Cir. 1998) ("Disputed facts relevant to sentencing must be established by a preponderance of the evidence, and the sentencing court may rely upon any information known to it" ). Accordingly, the Court evaluates the record in this case for purposes of factual determinations using a "preponderance of the evidence" standard, using all evidence known to it.

*Salim*, 287 F. Supp. 2d at 305-06 (*citing Franklyn*, 157 F.3d at 97).

The Second Circuit has repeatedly held preponderance of the evidence standard to be the proper standard for fact finding with respect to sentencing. *See United States v. McLeod*, 251 F.3d 78, 82 (2d Cir. 2001) ("we have ruled that the 'preponderance of the evidence' standard applies to determinations of relevant conduct for purposes of ascertaining the 'total punishment,' U.S.S.G. § 5G1.2(b), which may exceed the statutory maximum on a single count) (*citing United States v. White*, 240 F.3d 127, 136-37 (2d Cir. 2001), *and citing United States v. Cordoba-Murgas*, 233 F.3d 704, 708-09 (2d Cir. 2000) ("preponderance of the evidence" standard applicable to fact-finding supporting upward departure)). *Accord United States v. McLean*, 287 F.3d 127 (2d Cir. 2002) (finding in the drug context in the absence of a drug seizure, a district court must estimate the amount of drugs involved in a crime for sentencing purposes, and holding that the estimation "need be established only by a preponderance of the evidence." *quoting United States v. Prince*, 110 F.3d 921, 925 (2d Cir. 1997)).

Moreover, the Second Circuit has repeatedly held that "[i]n making that estimation, 'a sentencing court may rely on any information it knows about,'" including evidence that would not be admissible at trial." (*quoting* U.S.S.G. § 6A1.3 (1998) and *citing United States v. Brinkworth*, 68 F.3d 633, 641 (2d Cir.1995))

-3-

In their February 2, 2007 Memorandum, the defendants endeavor to argue that this well-settled principal of fact finding with respect to sentencing has somehow been undermined by the recent holdings of *Booker/Fanfan* and *Crosby*. (*See* Def. Mem. at 4). This is simply not the case. The Second Circuit could not have been clearer in the recent case of *United States v. Garcia*, 413 F.3d 201, 220 (2d Cir. 2005) where the Court held the following:

> Judicial authority to find facts relevant to sentencing by a preponderance of the evidence survives *Booker*." As the Second Circuit "explained in *Crosby* [*United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005)] after *Booker*, district courts are still statutorily obliged to "consider" the Guidelines, 397 F.3d at 111 (*quoting* 18 U.S.C. § 3553(a)(4)), which necessarily means they must determine the Guidelines range applicable to a particular defendant, *id*. This task is to be performed "in the same manner as before *Booker* [ ]," *id*. at 112, because "with the mandatory use of the Guidelines excised, the traditional authority of a sentencing judge to find all facts relevant to sentencing will encounter no Sixth Amendment objection. Thus, the sentencing judge will be entitled to find all of the facts that the Guidelines make relevant to the determination of a Guidelines sentence and all of the facts relevant to the determination of a non-Guidelines sentence." *Id.* (footnote omitted)

*Garcia*, 413 F.3d at 220. Thus, all of the cases holding that the preponderance of the evidence standard is the proper standard are equally valid and controlling post booker.

Thus, in the wake of *Booker/Fanfan* and *Crosby*, this Court must make a calculation under the existing Sentencing Guidelines, and then consider the final Guideline calculation when determining the sentence to be imposed. *See Booker*, 125 S. Ct. at 767 (holding that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing"); *Crosby*, 397 F.3d at 111-12. The Second Circuit has further instructed "that *Booker/Fanfan* and section 3553(a) do more than render the Guidelines a body of casual advice, to be consulted or overlooked at the whim of a sentencing judge. Thus, it would be a mistake to think that, after *Booker/Fanfan*, district judges may return

-4-

to the sentencing regime that existed before 1987 and exercise unfettered discretion to select any sentence within the applicable statutory maximum and minimum." *Id.* at 113.

The Second Circuit in *McLeod*, did find that in 'special circumstances,' a severe sentence that would result from upward adjustments or consecutiveness, imposed because of facts found under a "preponderance of the evidence" standard, may justify a downward departure. *See McLeod*, 251 F.3d at 82 (*citing United States v.Gigante*, 94 F.3d 53, 56 (2d Cir. 1996) (upward adjustments); *United States v. Rahman*, 189 F.3d 88, 154-57 (2d Cir. 1999) (consecutiveness). However, this does not affect the Court's guideline calculation with respect to loss but would only be a ground for departure in such "special circumstances." This case is not a case of special circumstances, but simply a fraud conspiracy that resulted in significant economic harm.

**B.      The Court Has More Than Sufficient Evidence to Make
A Reasonable Estimate of Loss Given Both the Trial
Testimony and the Sworn Testimony Presented at the Hearing**

As the Court is aware, the calculation of loss need not be precise. Rather, the loss calculation must be a reasonable estimate of the loss using the information available to the Court. *See, e.g., United States v. Granik*, 386 F.3d 404 (2d Cir. 2004)*; United States v. Burns*, 104 F.3d 529, 536 (2d Cir. 1997); *United States v. Bryant*, 128 F.3d 74, 75 (2d Cir. 1997) (per curiam ); *United States v. Gomez*, 31 F.3d 28, 31 (2d Cir. 1994) (per curiam). The Government bears the burden of proving the intended loss amount only by a preponderance of the evidence. *See, e.g., United States v. Desimone*, 119 F.3d 217, 228 (2d Cir. 1997); *United States v. Garcia*, 413 F.3d 201, 223 (2d Cir. 2005) (re-affirming preponderance standard in wake of *Booker*, and reviewing role enhancement under § 3B1.1(c)); *United States v. Beverly*, 5 F.3d 633, 642 (2d Cir. 1993). In

making its findings, the court may draw reasonable inferences from circumstantial evidence, *United States v. Jones*, 900 F.2d 512, 521 (2d Cir. 1990), and may rely on any type of information known to it. *United States v. Concepcion*, 983 F.2d 369, 387-88 (2d Cir. 1992).

By any standard, the Court has sufficient evidence to make a reasonable estimate of loss and find that the loss caused by the conspiracy was in the range of $2.5 million and $7 million. The Court has been provided with the sworn testimony from the head of operations of MMCA who testified that the corporate records reflect a $6.5 million dollars worth of loss – exclusive of lost profit – and that this loss was attributable to the fraud.  The witness was candid, truthful and her sworn testimony should be given significant weight.  Additionally, her testimony was entirely consistent with the loss amount presented to the Court a number of months earlier by way of a letter from the victim's counsel Day Berry & Howard.  In their memorandum, the defendants assert that the information provided to the Court and probation is insufficient to establish a loss amount.  To the contrary, as numerous cases demonstrate the evidence provided at trial and at the hearing is more than sufficient for the Court to make a finding.

In the case of *United States v. Michalek,* the court determined loss based on a preponderance of the evidence standard and without any sworn testimony.  The *Michalek* court simply relied on a letter from the Vice President of the bank that sustained the loss and an affidavit from a lawyer whose firm represented the bank.  *Michalek*, 819 F.Supp 250, 267 (W.D.N.Y. 1993), *aff'd United States v. Michalek,* 9 F.3d 1536 (2d Cir. 1993).   Moreover, the sentencing court stated that the defendant did not present any evidence that would lead the court to the highly unlikely conclusion that the victim would try and "saddle the defendant with a higher amount of loss for purposes of sentencing."  Additionally, the victim bank had

consistently maintained its loss amount.  Moreover, the sentencing court in *Michalek* found the loss estimate to be reasonable "[d]espite defendant's attempts to involve the court in a hypertechnical analysis of defendant's loans and a *de novo* review of the bankruptcy laws and foreclosure proceedings."  *Michalek*, 819 F. Supp at 268.  Here, as in that case, the principle victim provided a letter to the court regarding the amount of loss.  However, in this case the Court also has the benefit of sworn credible testimony.  Moreover, there is no indication that MMCA would in anyway overstate their loss especially in light of the fact that even after the fraud was discovered and even after the defendants were convicted MMCA has continued to attempt to mitigate their loss by repossessing vehicles and selling them at auction.  This continued attempt to mitigate the overall loss has had the affect of limited the loss even after the fraud was discovered.

A statement by the victim – here a sworn statement with supporting calculations– is more than sufficient for the Court to make its finding.  *See United States v. Riveria*,  152 F.3d 921, 1998 WL 391430 (Table) (2d Cir. 1998) (finding that the government met its burden of proving by a preponderance of the evidence the victim's amount of loss by providing the court the victim's submission of an affidavit calculating his loss).

As set forth in the Government's original Memorandum, sentencing courts have utilized numerous different methodologies for arriving at a reasonable estimate of loss and the Second Circuit has affirmed such findings, based on a preponderance of the evidence standard, absent clear error.  *See United States v. Brennan*, 395 F.3d 59, 74 (2d Cir. 2005) (*citing* United States v. Sasso, 59 F.3d 341, 353 (2d Cir. 1995), *United States v. Abbey*, 288 F.3d 515, 517 (2d Cir. 2002)

(*per curiam*).[3]

For instance, in *United States v. Kissi*, 2004 WL 20903720 (S.D.N.Y.) the district court held that the testimony of one government witness was enough to credit the government's estimate of loss. In *Kissi,* the court based its calculation of loss solely on the testimony of the Special Agent. According to the Special Agent's testimony 3,184 Social Security numbers were found on lists in the defendants handwriting on the same kind of paper. A co-conspirator witnessed the defendant handwrite Social Security numbers from an online database. The Special Agent testified that every three SSNs yielded $2,400-$2,500. This was sufficient to establish a loss of between $2.5 - $7 million. In *United States v. Davis,* 41 Fed. Appx. 493 (2d Cir. 2002), the Second Court upheld a loss estimate based on a 20% sample size. The court said that two years of losses is a sufficiently large sample size to serve as a proxy for the defendants participation in the conspiracy over nine and one-half years. *See United States v. Bryant* 128 F.3d 74 (2d Cir. 1997) ("'estimate, for example, may be based upon the approximate number of victims and an estimate of the average loss to each victim.' . . . , it is permissible for the sentencing court, . . . to estimate the loss . . . by extrapolating the average amount of loss from known data."); *Accord United States v. Sutton*, 13 F.3d 595, 599-600 (2d Cir. 1994) (not unreasonable for the sentencing court to compute the loss attributable to the defendant's scheme by estimating payment per occurrence and multiplying that sum by the total number of

---

[3]     In *United States v. Ross, et. al*, 77 F.3d 1525 (7th Cir. 1996). the Seventh Circuit rejected defendants arguments that the government's methodology for calculating loss was incorrect. In *Ross*, the defendants were officers of the Illinois School of Commerce who were engaged in a scheme to receive undeserved federal financial aid funds and student loan monies, and falsified records and financial documents. The sentencing court relied on the testimony of an agent regarding how he arrived at his calculations as well as a Department of Education bill to the institution.

applications).

Defendants have sought to create confusion by asserting that the loss to the lending company MMCA should necessarily be reduced by virtue of MMCA's lending practices. This argument is supported by neither the facts nor the law. As set forth in the Government's original Memorandum, the Court can only consider a victim's conduct as a grounds for departure in rare instances where the victim did something wrong. *See* U.S.S.G. § 5K2.10*; See United States v. LeRose*, 219 F.3d 335, 340 (2d Cir. 2000) (vacating departure based on supposed bank misconduct in bank fraud case, and stating that "we have emphasized that not only must the victim's conduct be provocative, but 'the victim must actually have done something wrong'").

Here there is no evidence that MMCA did anything "wrong." In fact there was evidence presented at trial that upon concluding that MMCA had a "disproportionately high delinquency, repossession and loss rate" MMCA placed Shoreline Mitsubishi on probation. (Trial Exh. 01-15). Moreover, there was evidence introduced at trial (Trial Exh. 06-14) that MMCA undertook income verification and sought to verify the representations made by the defendants as to the customers' income.

Additionally, the defendants argument that the loss amount attributed to the fraud by MMCA should be reduced because of the 'loose goose' lending practices misses the point of Exhibits AA and AB and Ms. Cutillo's testimony. Defendant's argue that Mitsubishi was "indeed responsible for the financing debacle because it was caused by its unprecedented 'Diamond Option' and 'Diamond Advantage' financing plans." Def. Mem. at 13. This argument is without merit. As established at the hearing, the loss suffered to MMCA on the Shoreline portfolio was above what was expected and of a wholly different nature than what occurred in

-9-

their other portfolios.  As Ms. Cutillo testified, MMCA's loss calculation was controlled for the various factors common to all portfolios (such as lending practices and financing plans) and thus, compared to losses suffered in the MMCA portfolios nationally the Shoreline losses were $6.5 million more than expected.  MMCA concluded and testified that the loss figure of $6.5 million was a result of the fraud.  (Cutillo Tr. at 48-49.)

Since the existence of this pervasive fraud was established beyond a reasonable doubt, the conclusion reached by MMCA that the additionally loss caused to the Shoreline portfolio was a result of the fraud is not only reasonable but by any standard a proper conclusion.  Simply put, any losses that occurred as a result of the lending practices would have been seen nationwide in all the portfolios.  Thus, the loose goose argument is of no moment since the calculations performed by MMCA controlled for the nationwide factors.  Accordingly, the lending practices, which are legally irrelevant as there was no wrong doing, are also factually incorrect and the testimony reflected as much.  (Cutillo Tr. at 48-49).

In light of the fact that "the sentencing court remains entitled to rely on any type of information known to it when determining an appropriate sentence," *United States v. Fagge*, 101 F.3d 232, 235 (2d Cir.1996), the Court can and should rely on the sworn testimony of the MMCA representative that they suffered a loss of $6.5 million as a result of the fraud for which the defendants were convicted.

**C.    The Government Has Provided Alternative Measures of Loss**

In their February 2, Memorandum the defendants assert that the Court should employ an 'alternative method' to set the offense level but do not provide an alternative.  Def. Mem. at 16. Any alternative method for reaching the offense level must involve determining a loss amount

and must be consistent with the Sentencing Guidelines, because, as set forth above, the recent Supreme Court and Second Circuit cases of *Booker/Fanfan* and *Crosby*, require this Court to make a calculation under the existing Sentencing Guidelines, and then consider the final Guideline calculation when determining the sentence to be imposed. *See Booker*, 125 S. Ct. at 767 (district courts "must consult those Guidelines and take them into account when sentencing"); *Crosby*, 397 F.3d at 111-12. Accordingly, the Court is not free, as defendants suggest, to disregard the loss calculation that is required by the guidelines, but to the contrary, the Court is "still statutorily obliged to 'consider' the Guidelines." *Garcia,* 413 F.3d at 220.

For this reason, the government has provided the Court alternative methods for calculating loss. These alternative methods, which are set forth in the Government's original Memorandum (and not repeated here) would permit the court to make a reasonable alternative estimate of the loss as required by the Second Circuit. *See Burns*, 104 F.3d at 536; *Gomez*, 31 F.3d at 31.

## D.    Restitution Should be Ordered

Title 18 Section 3663 authorizes restitution for "the amount of the loss sustained by each victim as a result of the offense." 18 U.S.C. § 3663(a)(1)(B)(i)(I) (emphasis supplied). Title 18 Section 3664(f)(1)(A), provides that "in each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses." *Id.* § 3664(f)(1)(A). In this case where MMCA has suffered a loss as a result of the defaults on the numerous loans that were originated based on the defendants fraudulent conduct. This loss determined to be $6.5 million should be included in the restitution order. *See* 18 U.S.C. § 3663(e)(1); 18 U.S.C. § 3664(j)(1). *See also United States v. Malpeso*, 126 F.3d 92, 95 (2d Cir. 1997).

## <u>CONCLUSION</u>

For the forgoing reasons, the government respectfully asserts that the loss figure testified to by Ms. Cutillo, the MMCA representative, provides the Court an appropriate and reasonable estimate of the loss caused by the defendants. Accordingly, the Court should using the preponderance of the evidence standard, find $6.5 million to be the amount of loss and order restitution accordingly.


Respectfully submitted,

KEVIN J. O'CONNOR
UNITED STATES ATTORNEY


  /s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY
Federal Bar No. ct25713
157 CHURCH STREET
NEW HAVEN, CONNECTICUT 06510
(203) 821-3700
Email: michael.mcgarry@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 21, 2007, a copy of the foregoing was served by U.S.

Mail on the following persons:

Robert C. Mirto, Esq.
Mirto, Ketaineck, Barrett & DiCrosta
P.O. Box 428
West Haven, CT 06516
(counsel for David Brown)

Kurt F. Zimmermann, Esq.
Silverstein and Osach, P.C.
234 Church Street, Suite 903
New Haven, CT 06510
(counsel for Angel Hernandez)

Michael S. Hillis, Esq.
Dombroski Knapsack & Hillis LLC
129 Whitney Avenue
New Haven, CT 06511
(counsel for Richard Brown)

Jonathan J. Einhorn, Esq.
412 Orange Street
New Haven, CT 06511
(counsel for Nelson Datil)

/s/
MICHAEL S. McGARRY
ASSISTANT UNITED STATES ATTORNEY